UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REVELATION YOGURT, LLC,

    Plaintiff,

v.

KLINE LAW GROUP, P.C., and
SCOTT KLINE,

    Defendants.

Case No. 20-11195
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING MOTION TO DISMISS [14]**

---

Plaintiff Revelation Yogurt alleges that Kline Law Group (KLG) and the firm's principal, Scott Kline, improperly released funds belonging to Revelation that were being held in an escrow account managed by KLG. Revelation sues KLG and Kline for breach of the escrow contract, conversion, breach of fiduciary duty, negligence, and fraud. KLG filed a motion to dismiss based on four different grounds, which Kline joins. Because the Court lacks personal jurisdiction over Defendants, the motion is granted, and the case is dismissed.

**I.**

In 2016, Revelation Yogurt, a limited liability company based in Michigan, entered into a franchise agreement with Reis & Irvy's Inc. to purchase robotic frozen yogurt kiosks. (ECF No. 11, PageID.138.) Revelation and Reis & Irvy's decided that payment for the kiosks would be managed through an escrow agreement. (*Id.* at PageID.139.) Reis & Irvy's selected KLG as the escrow agent. (*Id.*) Revelation negotiated provisions for the escrow agreement, including language requiring certain conditions to be met before escrow funds could be released. (*Id.* at

PageID.141.) Revelation, Reis & Irvy's, and KLG signed the escrow agreement. (*Id.* at PageID.142.) Following execution of the escrow agreement, Revelation deposited over $181,000 into the escrow account. (*Id.* at PageID.142.) At some point, Reis & Irvy's requested release of escrow funds to two third-party manufacturers. (*Id.* at PageID.143.) KLG released over $602,000 to these manufacturers in February 2018. (*Id.* at PageID.145–146.) And KLG released over $889,000 to another company in March 2018. (*Id.* at PageID.146.) (Apparently, although not pled, Reis & Irvy's also deposited money into the escrow account, and thus, much more than the $181,000 that Revelation deposited was available for release.)

Revelation argues that KLG's release of these funds was in violation of the escrow agreement. (*Id.*) In July 2018, Revelation requested that KLG release its escrow funds back to Revelation, but this request was not honored. (*Id.*) Revelation claims it has been damaged in the amount of at least $59,871 (which, under certain claims, would then be trebled). (*Id.* at PageID.147.) Revelation brought this suit against KLG in May 2020 and later amended the complaint to add Scott Kline as a defendant. (ECF No. 11.) Revelation alleges that KLG and Kline are both liable for breach of the escrow contract, conversion, breach of fiduciary duty, negligence, and fraud. (*Id.*)

KLG filed a motion to dismiss. (ECF No. 14.) In that motion, KLG noted that Scott Kline has not been properly served with process. (*Id.* at PageID.251.) But in its reply brief, Defendants stated that Scott Kline now joins in KLG's motion to dismiss. (ECF No. 19, PageID.327.) So the Court will treat the motion to dismiss as on behalf of both defendants. Defendants argue that (1) they are not subject to personal jurisdiction in this Court, (2) Revelation failed to join a necessary party, (3) the escrow agreement signed by the parties

2

requires arbitration of all disputes, (4) Revelation fails to state a claim against Defendants. (ECF No. 14, PageID.251.)

## II.

Before the Court can turn to Defendants' merits arguments it must address Defendants' challenge to personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

Revelation bears the burden of demonstrating personal jurisdiction. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 548 (6th Cir. 2016). But when, as here, "the district court resolves a Rule 12(b)(2) motion solely on written submissions, the plaintiff's burden is 'relatively slight,' and 'the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal[.]'" *Id.* at 548–49 (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)). And the facts must be viewed in the light most favorable to Revelation. *Id.* at 549.

In a diversity case such as this, Revelation must demonstrate that both due process and Michigan's long-arm statute are satisfied in order to exercise personal jurisdiction over Defendants. *Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012); Mich. Comp. Laws § 600.701 *et seq*.

Revelation argues that the Michigan long-arm statutes are satisfied for both KLG and Kline because they did or caused an act to be done, or consequences to occur, in Michigan resulting in an action for tort. (ECF No. 17, PageID.296); Mich. Comp. Laws §§ 600.705, 600.715. Revelation asserts five tort claims against Defendants: common-law conversion, statutory conversion, breach of fiduciary duty, negligence, and fraud.

But it is not clear that any of these tort claims are viable. As a preliminary matter, the Court rejects Revelation's allegations that KLG was in suspended status with the State of

3

California and thus not legally allowed to serve as an escrow agent. Defendants have submitted an uncontroverted affidavit from Scott Kline, which appends emails from the California Franchise Tax Board, which establishes that KLG's suspended status displayed on the California Secretary of State's website was an error. (ECF No. 18, PageID.308–309; ECF No. 18-1, ECF No. 311.) Since KLG was not in suspended status when it served as escrow agent for Revelation, Revelation's allegations that KLG fraudulently represented it was able to legally serve as escrow agent fail as a matter of law. This includes count six for fraud.

Revelation's other tort claims appear to be barred because they arise out of the escrow agreement. "Under Michigan law, in order for an action in tort to arise out of a breach of contract, the act must constitute (1) a breach of duty separate and distinct from the breach of contract, and (2) active negligence or misfeasance." *Spengler v. ADT Sec. Servs., Inc.*, 505 F.3d 456, 457–58 (6th Cir. 2007); *see also Hart v. Ludwig*, 79 N.W.2d 895, 897 (Mich. 1956). Revelation does not allege "violation of a legal duty separate and distinct from the contractual obligation." *Rinaldo's Const. Corp. v. Mich. Bell Tel. Co.*, 559 N.W.2d 647, 657–658 (Mich. 1997). Both of Revelation's conversion claims are based on the premise that KLG released escrow funds although the pre-conditions for release laid out in the escrow agreement were not met. (ECF No. 11, PageID.148–150.) Because the duty to release funds based on certain conditions arose only from the escrow agreement, Michigan law bars these claims. The same goes for the breach of fiduciary duty and negligence counts. Both counts allege that KLG had a duty to safeguard the escrow funds and only release them pursuant to the terms of the escrow agreement. (ECF No. 11, PageID.150–152.) Because these duties also arise from the escrow agreement, the breach of fiduciary duty and negligence counts are precluded.

So the Court is skeptical that Revelation has pled any viable tort claims. But assuming for the sake of argument that Revelation can plead a tort claim against KLG and Kline, Revelation may be able to satisfy the long-arm statute. After all, Michigan's long-arm statute is meant to be interpreted broadly. *See Brabeau v. SMB Corp.*, 789 F. Supp. 873, 876 (E.D. Mich. 1992) ("Michigan and federal case law is replete with examples of business transactions that have occurred outside the state of Michigan which have 'resulted' in an action for tort. Most cases similar to the instant case have held that the word 'any' is to be read liberally. Thus, any nexus between transaction and tort shall allow limited personal jurisdiction to operate.")

But even if Revelation can satisfy the long-arm statute, it cannot clear the second hurdle of personal jurisdiction—due process. The Michigan long-arm statutes extend as far as due process permits. *Green v. Wilson*, 565 N.W.2d 813, 816 (Mich. 1997). So once it is determined that a defendant's activities fit within one of the categories of the long-arm statutes, the Court need only analyze whether personal jurisdiction is permitted under the Due Process Clause of the U.S. Constitution. *Id.* The Due Process Clause requires that, in order to subject an individual or corporate defendant to personal jurisdiction, the defendant must have "certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *AlixPartners*, 836 F.3d at 549 (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).

The Sixth Circuit has articulated a three-part test to analyze the due process requirement: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state, (2) the cause of action must arise from the defendant's activities there, and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the

5

exercise of jurisdiction over the defendant reasonable. *Air. Prods.*, 503 F.3d at 550 (internal citations omitted); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

Purposeful availment is the "constitutional touchstone" of personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). This requirement is met where "the defendant's contacts with the forum state 'proximately result from actions by the defendant *himself* that create a substantial connection with the forum State.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Burger King.,* 471 U.S. at 475) (emphasis in original). The contacts "must show that the defendant deliberately reached out beyond its home." *Ford*, 141 S. Ct. at 1025 (internal quotation omitted). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (internal citations omitted); *see also Ford*, 141 S. Ct. at 1025 ("The contacts must be the defendant's own choice and not random, isolated or fortuitous.") (internal quotation omitted).

It is not entirely clear what contacts Revelation believes KLM and Kline have with Michigan. In its response brief, Revelation insinuates that KLG drafted and negotiated the escrow agreement behind the scenes even though Revelation only directly communicated with Reis & Irvy's during negotiations. (ECF No. 17, PageID.298.) Revelation also argues "it is not a stretch to assume that KLG and Kline may have assisted Reis & Irvy's in the marketing, negotiation and execution of the Franchise agreement." (*Id*.) But a stretch is exactly what it is. These allegations are simply attorney arguments which are not even pled in the complaint and thus are given no weight.

According to the complaint, KLG and Kline are residents of California. (ECF No. 1, PageID.2.) The only contacts the Court can identify that are properly pled are that KLG served as escrow agent to Revelation and that KLG's actions caused harm to Revelation, a Michigan company. The fact that KLG signed the escrow agreement to serve as escrow agent for Revelation is not, by itself, constitutionally sufficient contact. *Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). And "mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 278 (2014); *see also Surowiec v. Cap. Title Agency, Inc.*, No. 08-13543, 2009 WL 877633, at *4 (E.D. Mich. Mar. 30, 2009) ("Although some injury might be said to occur in Michigan because that was the plaintiff's domicile, 'the locus of such a monetary injury is immaterial, as long as the obligation did not arise from a privilege the defendant exercised in the forum state.'" (quoting *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1303 (6th Cir. 1989))).

Considering the undisputed facts, KLG and Kline have not conducted any activities which created a substantial connection with Michigan. KLG does not advertise its services in Michigan and did not reach out to Revelation. (ECF No. 15, PageID.275.) KLG became the escrow agent for the deal because Reis & Irvy's, a California company, is one of KLG's regular clients and Reis & Irvy's asked KLG to serve as escrow agent. (*Id.* at PageID.274.) Kline is not licensed in Michigan and has never even visited Michigan. (*Id.* at PageID.275.) Kline had never spoken to anyone at Revelation until after executing the escrow agreement in California. (*Id.* at PageID.274.) And the first time that KLG touched the escrow funds was when they were deposited into the firm's California bank account. (*Id.* at PageID.275.)

KLG and Kline's only connection to Michigan—serving as escrow agent for Revelation, a Michigan company—is "a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King* 471 U.S. at 475. KLG did not seek out Revelation as a client and only became involved as escrow agent on the request of Reis & Irvy's. *Cf. id.* at 479–80 ("[Defendant] deliberately reach[ed] out beyond Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization.") (internal quotation omitted). KLG would have no connection with Michigan if Revelation were located in another state. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722–23 (6th Cir. 2000) (holding that the actual course of dealings between the parties demonstrated that the defendant's contacts with Ohio were purely fortuitous and attenuated because the defendant's performance of the agreement was not focused on exploiting the Ohio market). Moreover, KLG's work as escrow agent for Revelation was limited to a single deal and was not part of a continuing or long-term business relationship with Revelation. *See Oxford Lending Grp., LLC v. Underwriters at Lloyd's London*, No. 2:10-CV-94, 2011 WL 335954, at *4 (S.D. Ohio Jan. 31, 2011) ("[Defendants'] transactions [as an escrow agent] were isolated circumstances and were not part of a continuing or long-term business relationship. Nothing indicates that [the defendant] 'reached out' to Plaintiff. [The defendant] communicated to Plaintiff in Ohio because that is where Plaintiff is located, not because [the defendant] was seeking to "reach out" and transact business in Ohio.").

So the Court finds that KLG and Kline did not purposefully avail themselves of the privilege of doing business in Michigan and their very limited contacts with Michigan are insufficient to support the exercise of personal jurisdiction over them.

**III.**

Because the Court cannot exercise personal jurisdiction over Defendants, the motion to dismiss (ECF No. 14) is GRANTED and the case is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

Dated: May 6, 2021

                                          s/Laurie J. Michelson
                                          LAURIE J. MICHELSON
                                          UNITED STATES DISTRICT JUDGE